**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Jaron REEVEY, Defendant–Appellant.**

**No. 02–4984.**

United States Court of Appeals, Fourth Circuit.

Argued: Feb. 27, 2004.

Decided: April 7, 2004.

**ARGUED:** Kelli Colleen McTaggart, Assistant Federal Public Defender, Greenbelt, Maryland, for Appellant. Christine Manuelian, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Greenbelt, Maryland, for Appellant. Thomas M. DiBiagio, United States Attorney, Baltimore, Maryland, for Appellee.

Before WILLIAMS, KING, and DUNCAN, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion. Judge KING wrote the opinion, in which Judge WILLIAMS and Judge DUNCAN joined.

## OPINION

KING, Circuit Judge:

Jaron Reevey appeals from his convictions and sentences in the District of Maryland for carjacking, kidnapping, and possessing a firearm in furtherance of a crime of violence. Reevey was sentenced to prison for concurrent terms of 121 months on the carjacking and kidnapping offenses, and he was sentenced to a consecutive eighty-four months on the firearms charge. On appeal, Reevey maintains that the district court erroneously denied his motions for substitution of counsel and for a continuance, that it erred in refusing to permit him to introduce evidence on the circumstances surrounding his arrest, and that it erroneously enhanced his sentence by two levels based on a threat of death. We reject Reevey's first two contentions and thus affirm each of his convictions. As explained below, however, we vacate his sentences for carjacking and kidnapping and remand for appropriate resentencing.

### I.

#### A.

Reevey and his girlfriend, Sabrina Wright, travelled by bus and train from New Jersey to Richmond, Virginia, in January 2002, staying for about a week at the home of Leon Parker. A friend of Parker's, Aaron Jones, agreed to drive Reevey and Wright to the Richmond bus station for their return to New Jersey. When Jones arrived at Parker's home to take Reevey and Wright to the bus station, Reevey obtained the keys to Jones's car and carried luggage to the vehicle. Reevey then returned to Parker's house and requested Jones to drive Reevey and Wright to New Jersey instead of to the bus station. Jones declined to do so, asserting that his car was in no condition for a long trip. In response, Reevey again requested that Jones drive them to New Jersey and offered to pay him for the trip. When Jones again declined, Reevey pulled a handgun, pointed it at Jones, and instructed Wright to draw a second weapon (which she did). Reevey directed Jones to lie down on the floor and used plastic "flex-cuffs" to secure his wrists behind his back. Reevey then ordered Jones to walk to the car and stated that he would be shot if he did not comply. When they reached the vehicle, Reevey forced Jones into the trunk and closed it.

After several stops between Richmond and Baltimore for fuel, food, and directions, Reevey stopped at a Baltimore bus station to use its restroom and to seek a refund on a bus ticket. When Reevey and Wright exited the vehicle, Jones, who had freed himself, made his way out of the trunk. When Reevey saw what was happening, he threatened to shoot Jones if he did not calm down. A nearby police officer then walked towards Reevey and Jones, and Jones stated that he had been abducted.

Reevey and Wright promptly reentered the car and tried to leave, but the policeman, Officer Murphy, drew his service weapon to prevent their escape. Murphy opened the passenger door of the car and heard Reevey hollering to Wright, "give me the gun." By this time, several officers had responded to Officer Murphy's call for support, and they blocked Reevey's path with a police cruiser. Reevey then rammed the cruiser, creating space to maneuver, and attempted to drive away. The officers pursued, catching up with Reevey and Wright when they crashed into a wall. Reevey then exited the vehicle, looked at Officer Murphy, and drew a handgun. On hearing shots, several officers fired on Reevey. When Reevey collapsed, the officers stopped firing and arrested him.

During these events, six officers fired forty-two shots at Reevey, who sustained eight wounds and was hospitalized for several weeks. The officers reported that Reevey had fired the first two shots; however, the weapon Reevey had drawn, as well as a second handgun in his possession, were inoperable.

### B.

On March 26, 2002, Reevey was charged in a three-count indictment with carjacking (in violation of 18 U.S.C. § 2119), kidnapping (in violation of 18 U.S.C. § 1201(a)(1)), and possessing a firearm in furtherance of a crime of violence (in violation of 18 U.S.C. § 924(c)(1)(A)).[1] On the morning of September 3, 2002, as his trial was called, Reevey made oral motions for substitution of counsel and for a continuance in order to obtain such counsel (collectively the "Motions"). In connection with the Motions, Reevey's appointed lawyers acknowledged that they had disagreed with Reevey on certain strategy issues and on whether to file certain motions; however, they advised the court that they were ready for trial. The court denied the Motions.

Two days later, the jury found Reevey guilty on all three counts of the Indictment. He thereafter filed two motions for a new trial, contending (1) that the court had erred in denying his Motions, and (2) that the court had erred in refusing to admit evidence on the circumstances of his arrest. The court denied both motions.

On December 9, 2002, the district court conducted a sentencing hearing. At the hearing, the court calculated Reevey's sentence based on the recommendations set forth in the Presentence Investigation Re-

---

1. Pursuant to § 924(c)(1)(A), which underlies Count Three of the Indictment:

 [A]ny person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . .—(i) be sentenced to a term of imprisonment of not less than 5 years; (ii) if the firearm is brandished, be sentenced to a term of not less than 7 years; and (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

 18 U.S.C. § 924(c)(1)(A). The underlying crimes of violence were Count One (carjacking) and Count Two (kidnapping). Reevey was sentenced under § 924(c)(1)(A)(ii) for brandishing the firearm.

port ("PSR"). In so doing, the court grouped the carjacking and kidnapping offenses pursuant to § 3D1.2(d) of the Sentencing Guidelines, which provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." As the Guidelines explain, counts involve substantially the same harm "when the offense level is determined largely on the basis of total amount of harm or loss . . . or some other measure of aggregate harm. . . ." *See* U.S. Sentencing Guidelines Manual § 3D1.2(d). Accordingly, as explained in the PSR, the court utilized the Robbery Guideline (which applies to carjacking offenses) in its sentencing, "since the Kidnapping was undertaken to facilitate the Carjacking and the [Robbery] Guidelines include an adjustment for Kidnapping." PSR at 6. Reevey then received a four-level enhancement for abducting Jones to facilitate a robbery and a two-level enhancement because the robbery involved carjacking. *See* U.S. Sentencing Guidelines Manual § 2B3.1(b)(4)(A) (authorizing four-level enhancement "[i]f any person was abducted to facilitate commission of the offense or to facilitate escape"); *id* § 2B3.1(b)(5) (authorizing two-level enhancement "[i]f the offense involved carjacking"). Over objection, the court also imposed a two-level enhancement for "a threat of death," pursuant to § 2B3.1(b)(2)(F) of the Robbery Guideline.[2]

The court sentenced Reevey to concurrent terms of 121 months in prison on the carjacking and kidnapping offenses, as grouped together, and to a consecutive eighty-four months on the firearms charge. Reevey filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

■■■ We review for abuse of discretion a district court's rulings on a motion to substitute counsel and on a request for a continuance. *United States v. Corporan–Cuevas*, 35 F.3d 953, 956 (4th Cir.1994). Similarly, a trial court possesses broad discretion in ruling on the admissibility of evidence, which we will not overrule in the absence of an abuse of such discretion. *United States v. Bostian*, 59 F.3d 474, 480 (4th Cir.1995). We review de novo a court's legal interpretation of the Guidelines, and we assess for clear error its factual determinations for applying the Guidelines. *United States v. Singh*, 54 F.3d 1182, 1190 (4th Cir.1995).

## III.

### A.

■■■ Reevey first contends that the district court committed reversible error in denying the Motions. In assessing this issue, we are obliged to consider three factors: (1) the timeliness of his Motions; (2) the adequacy of the court's inquiry into his complaint about counsel; and (3) whether Reevey and his counsel experienced a 'total lack of communication preventing an adequate defense.' " *United States v. Mullen*, 32 F.3d 891, 895 (4th

---

**2.** Section 2B3.1(a) of the Guidelines establishes a base offense level of twenty for robbery, and § 2B3.1(b)(2) authorizes enhancements for certain specific offense characteristics, specifically providing:
(A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished or possessed, increase by 5 levels; (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished or possessed, increase by 3 levels; or (F) if a threat of death was made, increase by 2 levels.
U.S. Sentencing Guidelines Manual § 2B.3.1(b)(2)(A)-(F).

Cir.1994) (quoting *United States v. Gallop*, 838 F.2d 105, 108 (4th Cir.1988)). And we are to weigh these factors against the trial court's interest in the orderly administration of justice. *Corporan–Cuevas*, 35 F.3d at 956.

■ First, as to timeliness, Reevey filed his Motions on the first day of trial. As we have explained, a continuance request for the substitution of counsel made on the first day of trial is clearly "untimely under all but the most exigent circumstances." *Id.; see Gallop*, 838 F.2d at 108 (finding motion made five days before trial untimely); *cf. United States v. Johnson*, 114 F.3d 435, 443 (4th Cir.1997) (finding timeliness factor favored defendant where motion filed over a month and a half before trial); *Mullen*, 32 F.3d at 896 (finding timeliness factor favored defendant where motion was filed twenty-seven days before trial and would have been heard in adequate time had government not forgotten to file response). Because Reevey failed to show any exigent circumstances to justify his last-minute requests, the Motions were untimely.

■ Second, the court's inquiry into the basis for the Motions was adequate. The court was informed that Reevey's counsel had spent an extensive amount of time with Reevey discussing various aspects of the case. The court also ensured that his lawyers were prepared for trial, despite Reevey's contention that they had spent more time in plea negotiations than in trial preparations.

■ Lastly, the court concluded, after inquiry, that Reevey and his lawyers had not experienced a lack of communication so substantial that it precluded an adequate defense. Although his lawyers had experienced some disagreements with Reevey, the court viewed them as "typical," and the lawyers did not feel that their communications with Reevey had broken down or that they were obligated to withdraw. Furthermore, the court observed Reevey and his counsel working together in the selection of a jury, and it noted that his lawyers had formulated an inventive trial strategy and had zealously represented Reevey. *See United States v. DeTemple*, 162 F.3d 279, 288–89 (4th Cir.1998) ("A total lack of communication simply does not exist where the attorney and the client communicate significantly during trial."). In these circumstances, the court did not abuse its discretion in denying the Motions.

### B.

■ Next, Reevey challenges the district court's exclusion of evidence concerning the circumstances of his arrest. Specifically, Reevey sought to introduce evidence challenging the officers' version of who fired the initial gunshots. He asserts that, because ballistics evidence revealed that his weapons were inoperable, he could not have fired the first shots. Reevey sought to use this evidence to discredit the officers' testimony, asserting that they had a motive to portray him as violent in order to avoid liability for shooting him, and that this motive "could have potentially tainted every aspect of the investigation." The court ruled the evidence irrelevant and declined to permit its introduction.

We are unable to find an abuse of discretion in the court's ruling. As the court observed, Reevey was not charged with any offense arising out of the circumstances surrounding his arrest, and the offenses charged were completed before the shooting incident occurred. In these circumstances, the court believed that such evidence may have confused the issues or misled the jury. These were circumstances that the trial court had broad dis-

cretion to address, *see* Fed.R.Evid. 403, and we thus affirm its evidentiary ruling.

## C.

Finally, Reevey contends that the two-level sentencing enhancement for a threat of death, combined with his § 924(c) conviction and sentence, resulted in an impermissible double counting under the Guidelines. As explained below, we agree with Reevey on this point.

### 1.

Pursuant to § 2B3.1(B)(2)(F) of the Guidelines, a sentence on a robbery conviction may be enhanced on the basis of a threat of death during the course of the offense.[3] *See* U.S. Sentencing Guidelines Manual § 2B3.1(B)(2)(F). The sentencing court imposed the threat-of-death enhancement on Reevey because he twice threatened to shoot Jones—first when Reevey walked Jones to the car in Richmond, and a second time at the Baltimore bus station when Reevey told Jones he would shoot him if he did not calm down. Reevey was not holding a weapon on either occasion, and Jones did not see a weapon when either threat was made.

 Double counting occurs when a provision of the Guidelines is applied to increase punishment on the basis of a consideration that has been accounted for by application of another Guideline provision or by application of a statute. *See United States v. Rohwedder*, 243 F.3d 423, 426–27 (8th Cir.2001). Double counting is generally authorized unless the Guidelines expressly prohibit it. *United States v. Crawford*, 18 F.3d 1173, 1179 (4th Cir.1994). In support of his contention that the threat-of-death enhancement constitutes imper-

missible double counting, Reevey relies on the commentary to § 2K2.4 of the Guidelines ("Application Note 4"). Application Note 4 provides:

> If a sentence under this guideline [governing § 924(c) offenses] is imposed in conjunction with a sentence for an underlying offense, *do not apply any specific offense characteristic for possession, brandishing, use, or discharge of . . . [a] firearm when determining the sentence for the underlying offense.*

*Id.* § 2K2.4, cmt. n. 4 (emphasis added). Pursuant to this provision, a court may not apply an enhancement for possession or use of a firearm if the defendant has also been convicted and sentenced under § 924(c) for possession of that firearm in furtherance of a crime of violence. According to Reevey, the threat-of-death enhancement was imposed for his possession and use of the firearm underlying his § 924(c) conviction—i.e., his threats were to *shoot* Jones with the handgun he had previously pointed at Jones. The sentencing court rejected Reevey's contention, however, ruling that Application Note 4's double-counting prohibition did not apply because a threat of death *can* occur absent a firearm. *See id.* § 2B3.1, cmt. n. 6 ("'A threat of death,' as used in subsection (b)(2)(F) may be in the form of an oral or written statement, act, gesture, or combination thereof.").

 Although a threat of death can occur absent a firearm, such a possibility does not warrant our application of a blanket rule that the threat-of-death enhancement can never fall within Application Note 4's double-counting prohibition. The relevant inquiry, under Application Note 4, is whether the threat-of-death enhance-

---

**3.** Reevey was convicted of carjacking, in violation of 18 U.S.C. § 2119, which constitutes a robbery offense for purposes of sentencing.

ment was applied "for possession, brandishing, use, or discharge of an explosive or firearm." In this case, both of the threats made by Reevey were to *shoot* Jones (with a handgun that Reevey had already displayed), and they involved the firearm Reevey was convicted of possessing under § 924(c). *See United States v. Franks*, 230 F.3d 811, 813–14 (5th Cir.2000) (concluding that sentencing court erred in enhancing sentence under § 2B3.1(b)(2)(F), where it was clear from evidence that threat of death was *related* to use of firearm); *United States v. Triplett*, 104 F.3d 1074, 1081–82 (8th Cir.1997) (employing similar analysis).[4] In these circumstances, the threat-of-death enhancement was imposed on Reevey for possession and use of the firearm he was convicted of possessing under § 924(c), and application of the enhancement thus falls within the scope of Application Note 4's double-counting prohibition.

### 2.

The Government next maintains that, even if Reevey's threats to shoot Jones fall within the scope of Application Note 4, there was no impermissible double counting because Reevey was convicted of two underlying offenses—kidnapping and carjacking. Pursuant to this contention, the threat-of-death enhancement applies only to the carjacking offense and the § 924(c)

conviction applies only to the kidnapping offense (or vice versa). According to the Government, a ruling to the contrary would accord Reevey a "bulk discount" for his criminal activity. *See United States v. Griffis*, 282 F.3d 443, 446–48 (6th Cir.2002) (upholding firearm enhancement for different robbery from that underlying § 924(c) conviction to preclude receipt of a "bulk discount" for using same weapon). We are unable to agree with the Government on this point.

. When Application Note 4 was amended in November 2000, the Sentencing Commission did so "to avoid the duplicative punishment that results when sentences are increased under both the statutes and the guidelines for *substantially the same harm.*" U.S. Sentencing Guidelines Manual app. C (Nov. 1, 2000) amend. 599. (emphasis added). The problem, as the Commission explained, was that "[s]ome courts interpreted 'underlying offense' narrowly to mean only the 'crime of violence' or 'drug trafficking offense' that forms the basis for the 18 U.S.C. § 924(c) conviction." *Id.* To remedy this problem, the Commission amended Application Note 4 to clarify that the term "offense" is to be viewed as it is defined in the Guidelines. *Id.* And under the Guidelines, the term offense means "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Con-

---

4. We also reject the sentencing court's conclusion that a November 2000 amendment to Application Note 4 mandates a different result. Prior to being amended, Application Note 4 (then designated as "Application Note 2") referenced § 2B3.1(b)(2)(F):

> Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm *(e.g., § 2B3.1(b)(2)(A)-(F) (Robbery))* is not to be applied in respect to the guideline for the underlying offense.

U.S. Sentencing Guidelines Manual § 2K2.4, cmt. n. 2 (1999) (emphasis added). The court concluded that, when the Sentencing Commission removed the example referring to § 2B3.1(b)(2)(A)-(F) (Robbery), it removed threats of death from the ambit of Application Note 4. Because amended Application Note 4, *by its plain language*, continues to prohibit the imposition of an enhancement "for possession, brandishing, use, or discharge of … [a] firearm," we must disagree.

duct) unless a different meaning is specified or is otherwise clear from the context." *Id.* § 1B1.1, cmt. n. 1(H). As a result, Application Note 4 now provides that a "sentence under this guideline accounts for any ... weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." *Id.* § 2K2.4, cmt. n. 4. And "relevant conduct" includes conduct that constitutes the "same course of conduct" "with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts...." *Id.* § 1B1.3(a)(2).

As to Reevey, the court grouped together the sentences for kidnapping and carjacking under § 3D1.2(d) because they were part of "the same course of conduct," and they "involved substantially the same harm." For sentencing · purposes, Reevey's carjacking and kidnapping offenses thus constitute the same "offense." Application Note 4 provides that, if a sentence is imposed on a § 924(c) offense in conjunction with a sentence for an underlying offense (in this case the grouped kidnapping and carjacking offenses), the sentencing court is not to "apply any specific offense characteristic for possession, brandishing, use, or discharge of ... [a] firearm when determining the sentence for the underlying offense." Accordingly, the threat-of-death enhancement resulted in an impermissible double counting, and the sentencing court thereby erred.[5]

### IV.

Pursuant to the foregoing, we affirm Reevey's convictions. However, we vacate his sentences for carjacking and kidnapping, and we remand for resentencing.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*

---

**5.** The authorities relied on by the Government to support its "bulk discount" theory are inapplicable because they each involved multiple and distinct firearms offenses. *See Griffis,* 282 F.3d at 446–48 (applying "bulk discount" theory to multiple and distinct firearms offenses); *United States v. Blake,* 59 F.3d 138, 139–40 (10th Cir.1995) (applying same analysis to two separate bank robberies). Reevey's convictions for carjacking and kidnapping were neither separate nor distinct, and they involved "substantially the same harm."