# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-1588

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DANIEL KATALINIC,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06-CR-323-2—**James F. Holderman,** *Chief Judge.*

ARGUED NOVEMBER 13, 2007—DECIDED DECEMBER 19, 2007

Before COFFEY, EVANS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* Daniel Katalinic pleaded guilty to bank robbery (18 U.S.C. § 2113(a)) and carrying a firearm in relation to a crime of violence (18 U.S.C. § 924(c)). At sentencing, the district court added two levels to the base offense level on the robbery count because Katalinic's codefendant made a death threat (U.S.S.G. § 2B3.1(b)(2)(F)) during the robbery. Katalinic then received a 37-month sentence for the robbery to be followed by an 84-month term on the firearm count. The primary issue on appeal is whether Application Note 4 to § 2K2.4 of the sentencing guidelines prohibits, as double counting, an upward adjustment for a death threat that is related to the firearm for which the defendant

received a mandatory consecutive sentence under § 924(c). This is the first time we have considered the issue, but we agree with our sister circuits and hold that Application Note 4 prohibits the adjustment. We therefore vacate Katalinic's sentence and remand the case to the district court for resentencing.

On May 4, 2006, Katalinic and Charles Maciorowski-Maltz robbed a bank in Mt. Prospect, Illinois. Katalinic carried a duffel bag when they entered, while Maltz held a loaded shotgun. They announced the robbery, and Maltz asked for the bank manager and where the vault was located. Maltz then gave the shotgun to Katalinic, took the duffel bag, and climbed over the teller counter to get to the vault. Meanwhile, Katalinic remained in the lobby holding the gun. While the manager was trying to get the vault open, Maltz told her to "hurry or I'll fucking shoot you." When the manager could not open the vault, Maltz took money from two teller drawers, and the two men fled from the bank.

After Katalinic entered guilty pleas to the two charges against him, a probation officer recommended in a PSR that the base offense level for the robbery should be increased by two levels for the statement Maltz made to the manager, which constituted a death threat under U.S.S.G. § 2B3.1(b)(2)(F). The PSR did not recommend a further increase based on Katalinic brandishing the shotgun because Application Note 4 to § 2K2.4 instructs not to do so when, as here, a defendant is also convicted for carrying a firearm in a crime of violence under § 924(c). The PSR added two points for taking property of a financial institution, *see* § 2B3.1(b)(1), subtracted three points because Katalinic accepted responsibility, *see* U.S.S.G. § 3E1.1, and arrived at a recommended offense level of 21. With a category I criminal history, Katalinic's guidelines range for the robbery was 37 to 46 months imprisonment. His firearm conviction,

however, required a minimum 84-month term to be served consecutively to any other term of imprisonment.

At sentencing, Katalinic objected to the adjustment for the death threat, arguing that it, like brandishing a gun, constituted double counting prohibited by Application Note 4 to § 2K2.4. Because the death threat was related to the firearm, he argued, it could not be used to increase his base offense level for the robbery when he was also subject to a mandatory sentence for the separate firearm conviction. The court rejected that argument, however, reasoning that a death threat, unlike possessing or brandishing a firearm, is not specifically listed as a prohibited weapon adjustment in Application Note 4. The court then found that the PSR correctly calculated the guidelines ranges for the robbery and the firearm, and after considering the 18 U.S.C. § 3553(a) factors, the court sentenced Katalinic to 37 months imprisonment for the robbery conviction to be followed by a 7-year term (84 months) on the firearm conviction.

On appeal, Katalinic first argues that the district court improperly increased the offense level for his robbery conviction based on Maltz's death threat to the bank manager. Katalinic contends that the prohibition against double counting in Application Note 4 to § 2K2.4 includes a prohibition against increasing a sentence for a death threat that is related to the firearm forming the basis of the § 924(c) conviction. Application Note 4 instructs that when a court imposes a sentence for a conviction under § 924(c) in addition to a sentence for an underlying offense, such as the robbery in this case, the sentencing court should "not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense." U.S.S.G. § 2K2.4, cmt. n.4. Because Maltz threatened to "shoot" the manager, Katalinic argues, the threat was related to the firearm and could not

be used to increase his base offense level for the robbery under U.S.S.G. § 2B3.1(b)(2)(F).

We review a legal interpretation of the sentencing guidelines and amendments *de novo. United States v. Howard*, 352 F.3d 332, 335 (7th Cir. 2003); *see also United States v. Carbaugh*, 141 F.3d 791, 792 (7th Cir. 1998). An application note is "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of" the guideline it interprets. *Stinson v. United States*, 508 U.S. 36, 38 (1993); *see also United States v. Dyer*, 464 F.3d 741, 743 (7th Cir. 2006). Even though the guidelines are no longer mandatory after *United States v. Booker*, 543 U.S. 220 (2005), courts must still begin the sentencing process by calculating the guideline sentence and must, therefore, use the commentary to interpret the guidelines. *See United States v. Mooney*, 425 F.3d 1093, 1100-01 (8th Cir. 2005).

This case turns on an amendment in 2000 to Application Note 4 of § 2K2.4.[1] Before the amendment, Application Note 4 included examples of the types of firearm characteristics a court could not use to increase an underlying sentence when also imposing a mandatory firearm sentence under § 924(c):

> Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm (*e.g.*,

---

[1] The double-counting prohibition was located in Note 2 until 2002 when the Sentencing Commission moved the prohibition to Note 4. *See* U.S.S.G., app. C, amend. 642 (2002). We will refer to the note as Note 4 throughout this opinion and point out when we are discussing earlier versions.

§ 2B3.1(b)(2)(A)-(F) (Robbery)) is not to be applied in respect to the guideline for the underlying offense.

U.S.S.G. § 2K2.4 cmt. n.2 (1998). The listed examples, § 2B3.1(b)(2)(A)-(F), are the firearm-related, specific offense characteristics a sentencing court must impose for robbery, including making a death threat, § 2B3.1(b)(2)(F). Courts interpreted the note to mean that they could not even use a death threat to increase the base offense level for an underlying offense if the defendant was also convicted of carrying a firearm under § 924(c) because the note directly referred to the death threat adjustment. *See United States v. Smith*, 981 F.2d 887, 892-93 (6th Cir. 1992) (reasoning that "it is clear that the Sentencing Commission viewed an express threat of death as the equivalent of possession, use, or discharge of a firearm in the course of a robbery"); *see also United States v. Franks*, 230 F.3d 811, 814 (5th Cir. 2000); *United States v. Triplett*, 104 F.3d 1074, 1081-82 (8th Cir. 1997); *United States v. Duran*, 4 F.3d 800, 804 (9th Cir. 1993). Most of the courts concluded, however, that the threat had to be related to the firearm to be considered double counting. *Franks*, 230 F.3d at 814; *Triplett*, 104 F.3d at 1082; *Smith*, 981 F.2d at 893.

In the 2000 amendment to Application Note 4, the Sentencing Commission removed the reference to § 2B3.1(b)(2)(A)-(F) without discussing the death-threat issue. *See* U.S.S.G. § 2K2.4 cmt. n.4; U.S.S.G., app. C, amend. 599 (2000). Application Note 4 now prohibits a sentencing court from applying "any specific offense characteristic for possession, brandishing, use, or discharge of" a firearm in an underlying offense when the court has imposed a sentence for a § 924(c) conviction, including any adjustment that would apply based on relevant conduct. U.S.S.G. § 2K2.4 cmt. n.4. The Commission was presumably aware of the caselaw prohibit-

ing death-threat adjustments in this context and tacitly approved the interpretation by not criticizing it. *See United States v. O'Flanagan*, 339 F.3d 1229, 1235 (10th Cir. 2003) (presuming that Sentencing Commission approved of judicial interpretations of guidelines when making minor changes and failing to mention caselaw); *see also United States v. Mitchell*, 353 F.3d 552, 556 (7th Cir. 2003) (using "general rules of statutory construction" when interpreting sentencing guidelines). Indeed, without addressing this specific issue, we have said generally that after the 2000 amendment, Application Note 4 "included the same general admonition against double counting" as it did before the amendment and that § 2K2.4 "continues to generally prohibit the application of specific offense characteristics relating to possession, brandishing, use, or discharge of a firearm to the underlying offense." *Howard*, 352 F.3d at 337, 338-39.

The two circuits to consider whether the amended Application Note 4 still prohibits an upward adjustment for a death threat have concluded that it does. *See United States v. Hazelwood*, 398 F.3d 792, 798-800 (6th Cir. 2005); *United States v. Reevey*, 364 F.3d 151, 158-59 (4th Cir. 2004). Both the Fourth and Sixth Circuits reasoned that the new language necessarily encompasses a death threat made in relation to a firearm, concluding that the "relevant inquiry" is "whether the threat-of-death enhancement was applied 'for possession, brandishing, use, or discharge of' a firearm." *Reevey*, 364 F.3d at 158-59 (quoting U.S.S.G. § 2K2.4 cmt. n.4); *accord Hazelwood*, 398 F.3d at 799-800. The *Hazelwood* court emphasized that the note "precluded the use of enhancements for *any* firearm-related conduct" that was part of the underlying offense. *Id.* at 799.

Although we have never addressed this precise issue, our cases discussing Application Note 4's general double-

counting prohibition are not in tension with the analysis in *Reevey* and *Hazelwood*. Specifically, we have held that Application Note 4 prohibits an increase in the sentence for an underlying offense "for the same weapon and the same conduct that underlie the § 924(c) conviction," but not if the offense level increase and the mandatory § 924(c) sentence were "imposed for different underlying conduct." *United States v. White*, 222 F.3d 363, 373 (7th Cir. 2000). Thus, in *United States v. Mrazek*, we held that a defendant who committed several armed robberies but was convicted under § 924(c) for only one of them could receive weapon adjustments for the other robberies. 998 F.2d 453, 454-55 (7th Cir. 1993). Similarly, in *White*, we held that a defendant who brandished a gun and used a bomb during a bank robbery could receive a weapon adjustment based on the bomb despite having received a § 924(c) sentence for the gun. 222 F.3d at 374-76.

Another part of Application Note 4 also supports the conclusion that a death threat relating to the firearm cannot be used to increase the offense level for the underlying offense. Application Note 4 instructs sentencing courts not to "apply any weapon enhancement in the guideline for the underlying offense" if "a co-defendant, as part of the jointly undertaken criminal activity, possessed a firearm different from the one for which the defendant was convicted under" § 924(c). U.S.S.G. § 2K2.4 cmt. n.4. If a defendant's sentence cannot be increased based on a codefendant's use of a firearm, it seems anomalous to nevertheless allow the defendant's sentence to be increased based on his codefendant's threat of death—a less serious offense characteristic as evidenced by the fewer points added for a death threat than for using a firearm. *See* U.S.S.G. § 2B3.1(b)(2)(A)-(F).

We choose to adopt the rule used by our sister circuits that death threats related to the firearm forming the basis of the § 924(c) sentence cannot be double counted

by increasing the base offense level for the underlying crime. Prohibiting double counting in this context comports with both the language in Application Note 4 and the intent of the Sentencing Commission.

Applying this rule, the district court erred because Maltz's death threat was related to the shotgun for which Katalinic received a mandatory sentence under § 924(c). While Katalinic brandished the shotgun, Maltz told the manager to hurry or he would "shoot" her. The threat to "shoot" was thus directly related to the gun carried into the bank to facilitate the robbery. *See Reevey*, 364 F.3d at 159 (holding that court could not use threats made during kidnaping after defendant had brandished gun to increase offense level because threats specifically to "shoot" victim necessarily involved firearm for which defendant received § 924(c) sentence). Moreover, both men brandished the shotgun in the lobby before Maltz went back to the vault, making it clear that the men could use the shotgun to follow through on a threat to "shoot." Because Katalinic and Maltz, as codefendants in jointly undertaken criminal activity, are accountable for each other's reasonably foreseeable conduct, it does not matter that Katalinic was in the lobby with the shotgun when Maltz made the "Hurry or I'll fucking shoot you" threat. *See* U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Bailey*, 227 F.3d 792, 800 (7th Cir. 2000). And Katalinic does not challenge the district court's finding that Maltz's statement was a death threat that was reasonably foreseeable to Katalinic. Thus, because the death threat was related to the shotgun, the district court should not have increased Katalinic's robbery sentence based on Maltz's threat.

Because the district court misapplied the sentencing guidelines in calculating the guidelines range, we must remand the case for resentencing. *See United States v. Scott*, 405 F.3d 615, 617 (7th Cir. 2005). If the district

court had not improperly adjusted Katalinic's base offense level upward two levels for the death threat under § 2B3.1(b)(2)(F), Katalinic's total offense level would have been 19, which would have resulted in an imprisonment range of 30 to 37 months for the robbery conviction. The district court sentenced Katalinic to 37 months, the lowest end of the guidelines range for the higher offense level the court calculated with the threat adjustment. Faced with a lower guidelines range, the district court may have sentenced Katalinic differently.

Katalinic also argues on appeal that the presumption of reasonableness applied to sentences within the guidelines range by appellate courts has produced a *de facto* mandatory sentencing regime in violation of *United States v. Booker*, 543 U.S. 220 (2005). Counsel withdrew that contention at oral argument, conceding that *Rita v. United States*, 127 S.Ct. 2456, 2462 (2007), has foreclosed it. Therefore, we do not address this issue.

For the foregoing reasons, we VACATE Katalinic's sentence and REMAND the case for resentencing.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*
