**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-4592**

UNITED STATES OF AMERICA,

             Plaintiff – Appellee,

     v.

ANDREW JASON BARNES,

             Defendant – Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Big Stone Gap.  James P. Jones, Chief District Judge.  (2:06-cr-00003-jpj)

Argued:  January 30, 2009          Decided:  March 26, 2009

Before WILKINSON, MICHAEL, and MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Roland Michael Santos, Harrisonburg, Virginia, for Appellant.  Anthony Paul Giorno, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.  **ON BRIEF:** John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant was convicted by a jury on two counts of conspiracy to commit assault by striking, beating or wounding, in violation of 18 U.S.C. §§ 7(3), 113(a)(4), 371; two counts of assault with a deadly weapon, in violation of 18 U.S.C. §§ 2, 7(3), 113(a)(3); and one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 2, 7(3), 113(a)(6). He appeals his convictions on the grounds that the trial court erred in denying his motions for substitution of counsel and judgment of acquittal. Finding no error, we affirm.

I.

On August 19, 2005, in an outdoor recreation area at the United States Penitentiary in Lee County, Virginia, three white inmates (Rassie Rector, Dylan Bowers, and defendant Andrew Barnes) attacked two Hispanic inmates (Martin Betancourt and then Jose Jaramillo). Rector, Bowers and defendant surrounded Betancourt on the handball court. Bowers struck Betancourt from behind, and then defendant joined in by kicking him with steel toed prison boots. Defendant and Bowers continued to beat Betancourt until he lost consciousness, causing such severe head trauma that Betancourt had to be taken by helicopter to a nearby hospital. When one of the prison guards fired a warning shot

2

during the assault, the inmates took off around the corner of the gymnasium and began beating Jaramillo there.

On January 3, 2006, defendant, Rector, and Bowers were indicted for these assaults. For each attack they were charged with a separate count of conspiracy to commit assault with a dangerous weapon, in violation of 18 U.S.C. §§ 7(3), 113(a)(3), 371, and a separate count of assault with a dangerous weapon, in violation of 18 U.S.C. §§ 2, 7(3), 113(a)(3). In addition, for the attack on Betancourt, they were charged with a count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 2, 7(3), 113(a)(6).

Several months later, on October 25, 2006, defendant filed a pro se motion to dismiss counsel. On November 13, 2006, defendant's counsel filed a motion to withdraw as counsel for defendant. The magistrate judge held a hearing on these and other motions on December 11, 2006.

At the hearing, defendant claimed that his counsel had not shown him all of the relevant security videos, that he was worried counsel would not be motivated if he chose to go to trial, and that counsel had not visited him for seven months. In response, counsel explained that he had tried to visit defendant on three occasions, but twice he had experienced difficulties arising from the fact that defendant was in a maximum security prison. Then, shortly before the date of his

3

fourth attempted visit, the court put the case on hold so that co-defendant Bowers could undergo a mental evaluation of his competence to stand trial. Counsel also affirmed that he was fully willing to continue representing defendant and explained that his motion to withdraw was simply made in response to defendant's pro se motion.

After considering these arguments, the magistrate judge denied defendant's motion and explained why defendant's fears were unfounded. In addition, to accommodate defendant's concerns, the magistrate told defendant that if he had any future problems with counsel he should inform the court at that time and it would "be glad" to address the problems then. Defendant did not subsequently raise any concerns about counsel.

The trial began on March 22, 2007. At the close of the government's case-in-chief, defendant moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. The district court denied defendant's motion. At the close of trial, the jury convicted defendant of two counts of conspiracy to commit assault by striking, beating or wounding, in violation of 18 U.S.C. §§ 7(3), 113(a)(4), 371 (a lesser-included-offense of the original counts charged); two counts of assault with a deadly weapon, in violation of 18 U.S.C. §§ 2, 7(3), 113(a)(3); and one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 2, 7(3), 113(a)(6). Defendant was

4

sentenced to 162 months of imprisonment, three years of supervised release, and was held jointly and severally liable with his co-defendant for restitution of $14,540.12. Defendant appeals his convictions.

## II.

Defendant argues that the magistrate judge erred when it denied his motion for substitution of counsel and therefore violated his Sixth Amendment right to counsel. We review the magistrate's denial of the motion for abuse of discretion, see United States v. Corporan-Cuevas, 35 F.3d 953, 956 (4th Cir. 1994), and find none. Because defendant's motion was timely, we consider whether the court's inquiry into defendant's claims was adequate and whether defendant and his counsel had "experienced a total lack of communication preventing an adequate defense." See United States v. Reevey, 364 F.3d 151, 156-57 (4th Cir. 2004) (internal quotation marks omitted).

First, the court's inquiry was adequate. The magistrate considered defendant's motion at a hearing and discussed the matter with both defendant and his counsel. The magistrate also addressed each of defendant's specific concerns.

Second, the court's inquiry did not reveal a complete breakdown of the attorney-client relationship. Defendant complained that he had not seen all of the relevant video

5

evidence of the incident, but the court assured defendant that counsel would make available all of the security videos. Defendant also stated: "I believe he doesn't want to go to trial and if it does go to trial, he will give me an off handed effort." After discussing the matter, the court explained that when counsel had previously suggested the option of a plea bargain he was simply fulfilling his duty as a lawyer, but he was still fully willing and able to represent defendant at trial -- in fact, he was a "very competent attorney" with "quite a bit of trial experience." Contrary to defendant's contention, counsel's motion to withdraw did not indicate that the attorney-client relationship had completely deteriorated; instead, as counsel explained at the hearing, he simply made the motion out of deference and in response to defendant's pro se motion for substitution of counsel.

Defendant also complained that his counsel had not visited him for seven months. As the court noted, the delay did not prejudice defendant and it was out of counsel's control: on counsel's third attempted visit, he was prevented from entering the maximum security prison for security reasons because he was wearing an orange shirt, and then, shortly before the date of his fourth attempted visit, the entire case was postponed for Bowers' mental competency evaluation. We recognize that this lack of communication left defendant legitimately worried and

that counsel could have handled the situation better by notifying defendant more regularly about the progress of the case. But this hardly rises to the level of a "total lack of communication preventing an adequate defense." Reevey, 364 F.3d at 156-57 (internal quotation marks omitted).

We also note that in all events counsel did a fine job at trial and defendant never subsequently complained about him, even though the court stated its willingness to reevaluate the situation if defendant experienced an "ongoing problem."

III.

Defendant claims that the district court improperly denied his motion for judgment of acquittal as to the two counts of conspiracy. He argues that the government's evidence did not establish the necessary elements of conspiracy: chiefly, prior agreements to commit the assaults. See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc) (stating the elements of conspiracy). Instead, he argues, the evidence showed only an ordinary fight.

We reject defendant's argument because, viewing the evidence in the light most favorable to the government, we find there is "'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" See United

7

States v. Osborne, 514 F.3d 377, 385 (4th Cir. 2008) (quoting Burgos, 94 F.3d at 862). Specifically, there is evidence from which a jury could legitimately infer that the two assaults by defendant, Rector, and Bowers (the three white inmates) were planned attacks on Hispanic inmates.

The security video of the assault on Betancourt demonstrates that it was a prearranged, joint action. The video shows the following: the three white inmates approached Betancourt on the handball court, where a group of Hispanic inmates had congregated; then, they surrounded him and, without provocation, Bowers struck him in the back of the head, knocking him to the ground; immediately afterwards, defendant began punching and kicking Betancourt with steel toed boots. This coordinated action suffices to show that the three white inmates had previously agreed to and planned out the assault.

There is no surveillance footage of the beginning of the assault on Jaramillo to similarly demonstrate that it was a planned coordinated action. However, when the evidence of the second assault is considered in light of the conspiracy to commit the first assault, it is sufficient to support a finding of conspiracy. The evidence of the second assault demonstrates that the two assaults were extremely close in time and location, they were committed by the same three white inmates, and they were both committed against Hispanic victims. A prison guard

testified that the three white inmates ran immediately from the assault on Betancourt around the corner of the gymnasium. Moments later, this is where they were caught attacking Jaramillo. Multiple prison officers testified to finding the three white inmates assaulting Jaramillo in that area of the recreation yard.

In addition, Rector made statements suggesting that both assaults were racially motivated attacks on Hispanic inmates. A prison intelligence officer testified that shortly after the attack she asked Rector whether the incident was truly over, and he responded that "as long as the Border Brothers [a Mexican prison gang] did not return to the yard, yes, it was over." JA 273-74. Prison security also intercepted a personal letter in which Rector wrote: "I'm in with well respected group of dudes (white) . . . Had to straighten a bunch of Mexicans out and a couple of them got hurt pretty bad . . . ." JA 284-85 (reprinted as read to the jury during trial). This evidence demonstrates a common purpose behind the two assaults.

The evidence of the second assault, therefore, closely links it to the conspiracy to commit the first assault and suggests that it too was the result of a prior agreement by the three white inmates to assault the two Hispanic inmates. This evidence is sufficient to support the jury's findings of conspiracy. As we have often noted, conspiracy is "usually

9

proven" by circumstantial evidence such as this because conspiracy is clandestine by its nature.  See United States v. Yearwood, 518 F.3d 220, 226 (4th Cir. 2008).  The parties dispute whether certain other testimony should inform our sufficiency inquiry, but there is more than ample evidence to sustain the jury's verdict on the foregoing.

IV.

The judgment is accordingly

AFFIRMED.

10