**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-4733**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RAY PROSISE, a/k/a Steiner, a/k/a Raymond Prosise,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, Senior District Judge. (3:07-cr-00322-RLW-1)

Argued: January 27, 2010          Decided: February 26, 2010

Before NIEMEYER, KING, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** James T. Maloney, MALONEY & DAVID, PLLC, Richmond, Virginia, for Appellant. Michael Calvin Moore, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Dana J. Boente, Acting United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ray Prosise was convicted of five drug- and firearm-related offenses in the Eastern District of Virginia and sentenced to life plus sixty months' imprisonment. In this appeal, Prosise contends that the district court erred by denying his pretrial motion to suppress evidence and in applying the Sentencing Guidelines. As explained below, we affirm.

I.

On April 1, 2008, at the conclusion of a two-day trial in Richmond, the jury returned verdicts of guilty as to all five counts against Prosise in the operative indictment.[1] Those counts were: conspiracy to distribute five kilograms or more of cocaine hydrochloride ("cocaine") and fifty grams or more of cocaine base ("crack"), in contravention of 21 U.S.C. § 846 (Count One); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two); possession of a firearm by a convicted felon, in contravention of 18 U.S.C. § 922(g)(1) (Count Three); assault on a federal officer, in violation of 18 U.S.C. § 111(a)(1) (Count

_____

[1] The operative indictment was the Second Superseding Indictment of January 22, 2008, which is found at J.A. 138-42. (Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

Four); and use of a communication facility in the commission of a felony, in contravention of 21 U.S.C. § 843(b) (Count Seven).

On July 2, 2008, the district court sentenced Prosise to life plus sixty months' imprisonment. Prosise then timely noted this appeal from the court's final judgment. We possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

II.

In assessing a trial court's ruling on a motion to suppress, we review the court's factual findings for clear error and its legal determinations de novo. See United States v. Kellam, 568 F.3d 125, 132 (4th Cir. 2009). In so doing, we must construe the evidence in the light most favorable to the prevailing party. See United States v. Branch, 537 F.3d 328, 337 (4th Cir. 2008). We review sentences under a deferential abuse-of-discretion standard, "first ensur[ing] that the district court committed no significant procedural error," including "improperly calculating[] the Guidelines range." Gall v. United States, 552 U.S. 38, 51 (2007). In assessing whether a sentencing court properly applied the Guidelines, we review factual findings for clear error and legal conclusions de novo. See United States v. Chacon, 533 F.3d 250, 253 (4th Cir. 2008).

III.

A.

On October 5, 2007, prior to trial, Prosise filed his motion to suppress evidence. The district court conducted a hearing on the suppression motion on November 9, 2007, and denied the motion by its Order of November 15, 2007, for reasons explained in the accompanying Memorandum Opinion (the "Opinion").[2] In ruling on the suppression motion, the court made the following findings of fact:

> Since 2005, [Prosise] had been the subject of an on-going investigation into alleged drug distribution. Law enforcement had interviewed more than six different informants or witnesses who had provided information about the defendant's alleged activities over a period of approximately two years. An informant referred to herein as Confidential Source ("CS") provided information to law enforcement in August 2007. He told law enforcement that he had assisted the defendant in transporting kilogram quantities of cocaine in the past, and he provided specific information regarding activities that had taken place at various locations. On August 16, 2007, the CS told law enforcement that Prosise was going to North Carolina to pick up multiple kilograms of cocaine and transport it back to Virginia in Prosise's green Suburban. Numerous conversations took place on August 16 and 17 between the CS and law enforcement, as the CS continued to update law enforcement on Prosise's alleged activities.
>
> Several law enforcement agencies were involved in the investigation, including agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATFE), agents from the Drug Enforcement Agency (DEA), members

_____

[2] The Opinion is found at J.A. 127-34.

4

of the Richmond District Office High Intensity Drug Trafficking Area Task Force (TF), and members of the Sussex County, Virginia Sheriff's Department. On the morning of August 17, law enforcement received new information from the CS regarding Prosise's whereabouts, including information that the defendant had returned from North Carolina with a quantity of cocaine, that he was armed with a .40 caliber Glock handgun with a laser sight and another handgun, and that he was at the residence of his wife/girlfriend at 18813 Manson Church Road, McKenney, Virginia. After receiving that information, a group of law enforcement officers, including officers and agents from the ATFE, DEA, TF, and Sussex County Sheriff's Department, gathered near the residence at 18813 Manson Church Road, McKenney, Virginia, waiting while another officer and personnel in the U.S. Attorney's Office prepared documents to obtain a federal search warrant for that residence and another used by the defendant. The CS had also reported that it was anticipated that the defendant would remain at that residence until approximately 11:00 a.m.[3] Based on that information, law enforcement had located the defendant's green Suburban at 18813 Manson Church Road, McKenney, Virginia. Law enforcement then developed a plan to stop the defendant in his vehicle if he left the residence before the search warrants were signed and executed. This plan was communicated to the various law enforcement officers, and the officers positioned themselves and their vehicles to carry out the plan.

---

[3] Although the district court found that the CS "reported that it was anticipated that the defendant would remain at [the Manson Church Road] residence until approximately 11:00 a.m.," Opinion 2, the record reflects that the CS informed the officers that Prosise would remain there until approximately noon. See J.A. 57-58 (hearing testimony of ATFE Special Agent Sean Netzel that "[t]he informant told us that the . . . particular vehicle Mr. Prosise was driving contained a large quantity of cocaine. That that vehicle and Mr. Prosise were going to be at a specific residence. And . . . that Mr. Prosise [was] going to stay at that residence until approximately noon on Friday, at which point [he] would leave and distribute this cocaine").

At approximately 11:45, the defendant left the residence. The officers moved into position with two vehicles, driven by TF Officer Talbert and TF Officer Layman, blocking Lew Jones Road approximately one mile from where the defendant turned right onto Lew Jones Road from Manson Church Road. TF Supervisor Blackwood, who was driving a vehicle that was positioned immediately in front of the defendant on Lew Jones Road at a speed of approximately 25 m.p.h., activated his emergency lights, and began to slow down. DEA Agent Montgomery, who was driving a vehicle that was immediately behind the defendant's vehicle, moved in closer to the defendant's vehicle. The defendant moved his vehicle from side to side, attempting to get around Blackwood, but Blackwood slowed down even more, stopped, and then reversed slowly, attempting to contain the defendant's vehicle. At the same time, Montgomery tried to assist with vehicle containment from the rear and inadvertently bumped the defendant's car's rear bumper. The defendant then accelerated, turned left, and hit the rear driver's side of Blackwood's vehicle. The defendant then drove up the left side embankment of Lew Jones Road, with his right two tires in the drainage ditch and his left two tires on the top of the embankment of the road, near the fence. He stopped briefly at the beginning of an open driveway, where he appeared to be stuck in the drainage ditch. At this point, several officers got out of their vehicles, wearing bullet-proof vests with police insignia. Talbert and Layman were in the driveway, directly in front of the defendant's Suburban. Talbert and others gave commands to the defendant, identifying themselves as the police and ordering him out of the car. As Blackwood approached the passenger door of the defendant's car, the defendant accelerated, the engine raced, the car rose up several feet, and it headed for Talbert. As the car came toward him, Talbert fired four rounds into the passenger side rear tire and rim. The defendant made a sharp left turn into the driveway and drove across the property, followed by Blackwood and Montgomery in their vehicles. The defendant stopped at a pond, then appeared to drive purposefully straight into the pond. He disregarded the officers' instructions to come out of the vehicle, instead remaining in the vehicle and throwing what appeared to be 8 to 10 one-ounce baggies

6

of white powder and other items out of the car into the pond for several minutes. He finally exited [through] the passenger side window, waded ashore, and was placed under arrest. The officers retrieved the baggies and a .40 caliber Glock handgun with a laser sight from the pond just outside the Suburban's driver's side door. They also found scales in the car.

Opinion 1-4 (footnote and citations omitted).

Prosise had moved "to suppress any and all evidence taken from [him] or his person or his automobile after he was illegally detained and searched in violation of his Constitutional rights." J.A. 16. Prosise relied on the same suppression theory in the district court that he asserts on appeal: that he was seized for Fourth Amendment purposes as of the time the officers initiated the roadblock, and that, at that point, there was no reasonable suspicion of criminal activity to justify a Terry stop. See Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (recognizing that, under Terry v. Ohio, 392 U.S. 1 (1968), "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot").

The district court rejected the proposition that Prosise was seized when the officers initiated the roadblock, as "Prosise was not stopped by the roadblock set up by the officers." Opinion 6 (distinguishing Brower v. County of Inyo,

7

489 U.S. 593, 599 (1989), where the suspect "was meant to be stopped by the physical obstacle of the roadblock — and . . . was so stopped"). The court also rejected any notion that Prosise was seized when his vehicle collided with those of officers Montgomery and Blackwood, based on its findings "that Agent Montgomery's bumping of Prosise's rear bumper was inadvertent and that [Prosise] caused the crash into Blackwood's vehicle." Id. at 6-7 (recognizing that, under Brower, 489 U.S. at 597, police may effect seizure by intentionally sideswiping suspect's car and thereby producing crash that terminates suspect's freedom of movement). As such, the court concluded that "there was no seizure of [Prosise] until he exited his vehicle [into the pond], waded ashore, and submitted to the officers." Id. at 7.

Next, the district court ruled that, at the time they initiated the roadblock, the officers "had reasonable suspicion based on articulable facts that the defendant was engaged in criminal activity." Opinion 7. The court premised its reasonable suspicion ruling on "the on-going investigation of the defendant's drug distribution activities, the historical information that had been provided, and the up-to-the-minute information being provided by the CS about the defendant's illegal activities in the hours just prior to this incident." Id. Indeed, the court recognized "that the information that law

8

enforcement had regarding the defendant was provided by numerous informants and not just a single anonymous tip from an unknown informant." Id. (distinguishing Florida v. J.L., 529 U.S. 266, 270-71 (2000)). The court emphasized that "[t]he officers had historical information provided by at least six different informants and a CS who was providing up-to-the-minute information regarding the defendant. Some of the information provided by the CS was in fact corroborated by the observations of various law enforcement officers." Id. at 7-8.

We conclude that the district court properly denied Prosise's motion to suppress. First of all, Prosise's theory of illegal seizure rests on the proposition that he was seized as of the time the officers initiated the roadblock, in that the roadblock partially restrained his freedom of movement, even though it did not stop him. Put simply, such proposition is foreclosed by Supreme Court precedent. See California v. Hodari D., 499 U.S. 621, 626 (1991) ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not."); Brower, 489 U.S. at 599 ("We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result."). Moreover, Prosise acknowledges that we must defer to the district court's findings

9

— specifically that he was not stopped by the roadblock, but rather intentionally drove into the pond, attempted for several minutes to discard evidence, and only thereafter exited his vehicle and surrendered to the officers — because such findings are not clearly erroneous. Thus, there is no merit to Prosise's assertion that he was seized as soon as the roadblock began.

In any event, even if Prosise was seized when the officers initiated the roadblock, the information provided by the CS was sufficiently reliable to establish reasonable suspicion that Prosise was currently engaged in criminal activity. The officers had heard from at least five witnesses, in addition to the CS, that Prosise was involved in drug trafficking; the identities of the informant/witnesses were known to the officers; the CS was giving the officers up-to-the-minute information about Prosise's activities, including information that his vehicle contained a large quantity of cocaine that Prosise intended to distribute on the day of his arrest; and the officers corroborated several details of the CS's information, including the description of Prosise's vehicle, the residence where it was parked, and the fact that Prosise would leave the residence in the vehicle at approximately noon on the day in question. See supra note 3; see also Alabama v. White, 496 U.S. 325, 332 (1990) (recognizing that even anonymous tip can justify Terry stop where "significant aspects of the caller's

10

predictions were verified"). In these circumstances, we affirm the district court's denial of Prosise's motion to suppress evidence.

B.

In sentencing Prosise, the district court adopted the probation officer's Presentence Investigation Report (the "PSR") without change. On combined Counts One, Three, Four, and Seven, the PSR recommended a Guidelines offense level of 40, premised on a drug quantity offense level of 38, see USSG § 2D1.1(c)(1), and a two-level increase for possession of a dangerous weapon, id. § 2D1.1(b)(1).[4] The PSR then assigned a six-level official victim enhancement, id. § 3A1.2(c)(1); a four-level aggravating role enhancement for being an organizer or leader in criminal activity, id. § 3B1.1(a); and a two-level enhancement for obstruction of justice, id. § 3C1.1. Accordingly, Prosise's total offense level was 52. The PSR initially calculated Prosise's criminal history category as IV, but elevated that category to VI because of Prosise's status as a career offender under Guidelines section 4B1.1. The resulting Guidelines sentence was life imprisonment — the sentence for any defendant with an offense level of 43 or more. With respect to Count Two,

---

[4] The PSR applied the 2007 edition of the Guidelines and the May 1, 2008 supplement thereto.

11

the PSR recognized that the applicable Guidelines sentence was a sixty-month consecutive term of imprisonment, as mandated by statute. See 18 U.S.C. § 924(c)(1)(A), (D); USSG § 2K2.4(b). After overruling Prosise's objections to the PSR and denying his motion for a downward departure, the district court imposed the total sentence, as prescribed by the Guidelines, of life plus sixty months' imprisonment.[5]

On appeal, Prosise challenges the district court's application of the Guidelines in four respects. More specifically, he first contends that the court erred in calculating drug quantity, resulting in an offense level of 38, rather than what he asserts is the proper level of 34. Prosise further maintains that the court erred by imposing the two-level dangerous weapon enhancement, the four-level leadership enhancement, and the two-level obstruction of justice enhancement. Importantly, Prosise preserved his objections to these purported errors at the time of sentencing. Nevertheless, because Prosise had a total offense level of 52 and the Guidelines sentence is life for level 43 or more, any errors were harmless unless they collectively involve the incorrect

---

[5] The total sentence was comprised of concurrent terms of life on Count One, 120 months on Count Three, 96 months on Count Four, and 96 months on Count Seven, and the consecutive term of 60 months on Count Two.

application of at least ten levels.  See United States v. Lynn, __ F.3d __, No. 08-5125(L), slip op. at 6 (4th Cir. Jan. 28, 2010) (recognizing, in wake of Gall, that properly preserved objections to procedural sentencing errors can be subject to harmlessness review pursuant to Federal Rule of Criminal Procedure 52(a)); see also Williams v. United States, 503 U.S. 193, 203 (1992) (observing, pre-Gall, that misapplication of Guidelines is harmless under Rule 52(a) if "the error did not affect the district court's selection of the sentence imposed").

In summary, we conclude that the district court erroneously applied the two-level dangerous weapon enhancement, but that the court properly imposed the four-level leadership and the two-level obstruction of justice enhancements.  Accordingly, we need not reach Prosise's contention that the court should have assigned him a drug quantity offense level of 34, rather than 38.  Even if Prosise is correct on that issue, his total offense level would yet be 46, rendering any error in the drug quantity calculation harmless.

First of all, the Government concedes error with respect to the two-level dangerous weapon enhancement, and we agree.  The district court imposed this enhancement, under Guidelines section 2D1.1(b)(1), in calculating Prosise's sentence on the combined counts that included Count One, conspiracy to distribute cocaine and crack, in contravention of 21 U.S.C.

13

§ 846. Significantly, Count One was the offense underlying Count Two, possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). And, Prosise received a consecutive sixty-month term of imprisonment on Count Two, as prescribed by Guidelines section 2K2.4(b) and mandated by statute. The Application Notes for section 2K2.4 instruct that, "[i]f a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession . . . of [a] firearm when determining the sentence for the underlying offense." USSG § 2K2.4 cmt. n.4. Furthermore, the Application Notes instruct "not [to] apply any weapon enhancement in the guideline for the underlying offense . . . if . . . in an ongoing drug trafficking offense, the defendant possessed a firearm other than the one for which the defendant was convicted under 18 U.S.C. § 924(c)." Id. As such, the dangerous weapon enhancement was improperly applied to Prosise with respect to his Guidelines sentence on Count One, whether it was imposed for possession of the same or a different firearm as that involved in Count Two. Cf. United States v. Reevey, 364 F.3d 151, 158-59 (4th Cir. 2004) (recognizing that defendant convicted and sentenced under § 924(c) was not subject to threat-of-death enhancement for use

14

of firearm during underlying carjacking offense (citing USSG § 2K2.4 cmt. n.4)).

As for the four-level leadership enhancement, such enhancement applies "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a); see United States v. Jones, 356 F.3d 529, 537-38 (4th Cir. 2004). According to the Application Notes for section 3B1.1, to qualify for the leadership enhancement, the defendant must have been the organizer or leader "of one or more other participants" — with a "participant" being defined as "a person who is criminally responsible for the commission of the offense," even if not convicted. USSG § 3B1.1 cmt. nn.1-2. The district court agreed with the probation officer that Prosise was the leader or organizer of "multiple" participants, J.A. 538, including two informants who testified at trial that Prosise "directed [them] to transport and distribute narcotics," id. at 566. The informants' testimony indeed reflects that Prosise was their organizer or leader in the Count One conspiracy, as well as that the conspiracy involved five or more participants. Accordingly, the court did not err by imposing the leadership enhancement.

Finally, the two-level obstruction of justice enhancement is applicable under Guidelines section 3C1.1 where "the defendant willfully obstructed or impeded, or attempted to

15

obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." The Application Notes for section 3C1.1 specify, however, that if the obstructive "conduct occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant [the enhancement] unless it resulted in a material hindrance to the official investigation or prosecution of the instance offense or the sentencing of the offender." USSG § 3C1.1 cmt. n.4(d). The PSR recommended the obstruction of justice enhancement based on (1) Prosise's destruction of cocaine by throwing it into the pond at the time of his arrest, and (2) his subsequent directive to his mother and brother to distribute crack, hidden in a vehicle, that had escaped detection during a post-arrest police search. The district court found "that the defendant's conduct in both of these instances constituted obstructive behavior" and, thus, imposed the enhancement. J.A. 538.

In challenging the obstruction of justice enhancement, Prosise contends that "there was no evidence to suggest that [his] request that his mother and brother sell undiscovered narcotics was intended to or did obstruct law enforcement in any manner," Br. of Appellant 16, and that his destruction of evidence in the pond at the time of his arrest, standing alone,

16

is an insufficient basis for the enhancement. The district court did not clearly err, however, in finding that Prosise's directive to his mother and brother constituted a willful obstruction of justice (even if there was another motive behind the directive, such as profiting from the sale of the drugs). Cf. United States v. Kiulin, 360 F.3d 456, 460-61 (4th Cir. 2004) (affirming obstruction of justice enhancement where court inferred from recorded conversation that defendant agreed to lie to police to exonerate accomplice). Consequently, Prosise's destruction of cocaine did not "stand alone" as reason for the enhancement, which was properly applied.

IV.

Pursuant to the foregoing, we affirm the judgment of the district court.

AFFIRMED