NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 15, 2008
Decided December 18, 2008

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

JOHN L. COFFEY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 08-1599

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
| *v.* | No. 3:07-CR-00084(01)RM |
| EDWIN E. LEWIS III, *Defendant-Appellant.* | Robert L. Miller, Jr., *Chief Judge*. |

**ORDER**

Edwin Lewis III was charged with possessing a firearm as a felon, *see* 18 U.S.C § 922(g), possessing "crack" with intent to distribute, *see* 21 U.S.C. § 841(a)(1), and possessing a gun in furtherance of the drug crime, *see* 18 U.S.C. § 924(c). After a jury trial, Lewis was convicted of the first two charges, but was acquitted of the third, and the court sentenced him to 120 months' imprisonment for being a felon in possession of a gun and 210 months' imprisonment for possessing "crack" with intent to distribute, the sentences to run concurrently. On appeal Lewis challenges only the district court's assessment of a two-level upward adjustment for obstruction of justice based on the court's finding that Lewis

perjured himself at trial, and because we are convinced that the district court did not commit clear error in applying the adjustment, we affirm.

## Background

Police executing a search warrant at a house in South Bend, Indiana, found defendant Lewis sleeping on a couch, a gun under that couch, and over 50 grams of "crack" in the kitchen. The drugs were divided into two stashes. A smaller amount, 3.1 grams, was found in a kitchen cupboard inside a lightbulb box, near a box of sandwich bags. A greater amount, 48.4 grams, was above eye level on top of the kitchen cabinets as well as a digital scale in the dining room in the same area with Lewis.

Lewis was interviewed at the scene and told the police he had been living at the house for about two weeks and that no one else lived there except his sister who stayed there off and on. He admitted that he bought the gun earlier that week but denied any knowledge of the drugs. Lewis initially said the scale was his but later on denied knowing anything about it. Near the end of this taped interview, Lewis first made mention of Steve Jackson, his sister's boyfriend, and suggested he might be the one selling "crack." The interviewer did not ask Lewis anything else about Jackson because he concluded that Lewis was lying and ended the interview.

The tape of the interview was played for the jury at trial at Lewis's request, and when Lewis testified he repudiated most of his interview statements. He continued to deny knowing about the "crack," though at trial he also insisted that he was not the owner of the gun. He readily admitted that he bought and used "crack" daily with his sister. But Lewis said the "crack" found in the kitchen must have belonged to Steve Jackson, who, Lewis now asserted, had always been the primary resident of the house. Lewis testified that he and Jackson never stayed at the house at the same time: Jackson lived there during the week and Lewis on the weekends. Lewis maintained that he lied to the police about owning the gun and living at the house to protect Jackson and that he changed his story after deciding that Jackson was not worth protecting.

Prosecution witnesses testified about signs of drug dealing found in the house. One police officer testified that drug dealers often divide their inventory and sell from a small stash, replenishing this small stash as necessary. In this way, dealers protect themselves from theft because the buyers do not know the full amount or the location of the drugs. The officer also noted that sandwich bags like those found next to the smaller stash are used to package smaller amounts of drugs for sale. Another officer testified that dealers commonly use a scale similar to the one found at the house to weigh the drugs.

Lewis's main defense was that he did not know the drugs were in the house, and a minor theme was that he used but did not deal "crack."   The jury found Lewis guilty of possessing a gun as a felon and possessing drugs with intent to distribute but acquitted him of possessing the gun in furtherance of the drug crime.  At sentencing the government requested a two-level increase for obstruction of justice, *see* U.S.S.G. § 3C1.1, based in part on Lewis's testimony that he was a user of crack but not a dealer.  The district court found that Lewis had committed perjury when he "testified at trial that he was not a dealer, and that the crack cocaine found in the house . . . was for personal use by his sister and him." The court reasoned that the amount of "crack" found was more than a user would normally possess and that the scale and packaging material evidenced that Lewis was a dealer.

## Analysis

Lewis argues that the district court committed clear error in applying the increase for obstruction.  Lewis insists that the record of his testimony "does not contain any statement . . . that the cocaine found . . . in the kitchen of his apartment was held by him for his personal use."  Thus, he argues, the district court had no basis for finding obstruction.

Although the sentencing guidelines are no longer mandatory, they are the starting point for determining a reasonable sentence.  *United States v. Bush*, 523 F.3d 727, 729 (7th Cir. 2008).  If the district court calculated the guidelines range incorrectly, then the case must be remanded for resentencing, *United States v. Katalinic*, 510 F.3d 744, 748 (7th Cir. 2007), unless the sentence did not "result" from the error, *Williams v. United States*, 503 U.S. 193, 202-03 (1992); *see United States v. Anderson*, 517 F.3d 953, 965 (7th Cir. 2008).

The guidelines mandate a two-level upward adjustment if the sentencing court finds by a preponderance of evidence that the defendant obstructed justice.  *See* U.S.S.G. § 3C1.1; *United States v. Williams*, 272 F.3d 845, 864 (7th Cir. 2001).  Lying under oath constitutes obstruction.  U.S.S.G. § 3C1.1 cmt. 4(b).  A defendant perjures himself if he gives "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  *United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *see United States v. Stokes*, 211 F.3d 1039, 1045 (7th Cir. 2000).  A district court cannot automatically impose the two-level increase if the defendant testified and was found guilty of the charges.  *Williams*, 272 F.3d at 864.  Rather, the trial court must make a finding that the defendant made a willful and material false statement.  *Id.*  This requirement is met "[a]s long as the trial court determined that the defendant lied to the judge and jury about matters crucial to the question of the defendant's guilt."  *United States v. Saunders*, 359 F.3d 874, 879 (7th Cir. 2004).

When a defendant challenges the application of § 3C1.1, our review of the sentencing court's underlying factual findings is for clear error. *United States v. Price*, 516 F.3d 597, 606-07 (7th Cir. 2008). Those factual findings will stand as long as they are "plausible in light of the record in its entirety." *United States v. White*, 368 F.3d 911, 916 (7th Cir. 2004).

In this case the district court imposed the two-level increase because "Mr. Lewis testified at trial that he was not a dealer, and that the crack cocaine found in the house where he was staying was for personal use by his sister and him." Lewis reads this statement too narrowly; it is beyond doubt that Lewis testified that he was not a dealer. And that false testimony is alone enough to sustain the obstruction adjustment because it goes directly to the charge of possession with intent to distribute. *See United States v. Griffin*, 310 F.3d 1017, 1022-23 (7th Cir. 2002); *United States v. Anderson*, 189 F.3d 1201, 1214 (10th Cir. 1999); *United States v. Jones*, 983 F.2d 1425, 1430-31 (7th Cir. 1993); *United States v. Ashers*, 968 F.2d 411, 414 (4th Cir. 1992).

The second part of the district court's statement—that Lewis had testified that the crack in the house was for his sister's and his personal use—is a fair inference from Lewis's testimony. This inference is not implausible in light of the record as a whole. *See White*, 368 F.3d at 916; *see also Jones*, 983 F.2d at 1431 (finding no error even though the court adopted PSIs containing some factual errors). Although Lewis consistently denied knowing about the "crack" in the house, his lawyer went to great lengths to establish that Lewis was a user of "crack" rather than a dealer. Counsel cross-examined a prosecution witness to demonstrate that an ashtray, spoon, and candle found in a bedroom could be used to liquify "crack" for injection, and later Lewis testified that he and his sister used those items to ingest "crack." Lewis admitted that the amount of "crack" in the house was a distribution quantity and that "people who use crack sometimes sell crack." But, he added, a user "wouldn't be considered a dealer for too long because the usage would overcome the sales," thus implying that because he was a user he was not a dealer. Furthermore, during cross-examination Lewis agreed that a dealer "wouldn't want to leave a quantity of crack cocaine somewhere with a couple of users" because "they'd smoke it right up," casting doubt on the theory that Jackson was the dealer and left the drugs in the kitchen. Thus, an underlying theme of the defense was that if the jury did find that Lewis knew about the "crack," he was just a user, not a dealer, and thus he did not have the intent to distribute, a necessary element of the charge. It is obvious that the court absolutely rejected Lewis's contention that he knew nothing about the drugs, and this rejection is supported by the record. *See Carnes Co. v. Stone Creek Mech., Inc.*, 412 F.3d 845, 847-48 (7th Cir. 2005). The court's sentencing statement included the next inferential step, that Lewis argued he could not be convicted of a distribution charge because he was only a user, not a dealer.

Alternatively, even if the district court's reasons for the obstruction adjustment might be somewhat ambiguous, the outcome is still the same.  Two times during his testimony Lewis said explicitly that he did not know there was "crack"  in the house, that he never observed the "crack" in the house, and that he never sold the drug to anyone.  Thus the record is clear that Lewis flatly denied the drug charges, and neither the judge nor the jury believed him.  And so a finding of perjury is not clearly erroneous.  *See United States v. Savage*, 505 F.3d 754, 763-64 (7th Cir. 2007); *Saunders*, 359 F.3d at 879.

AFFIRMED.